HERMAN LESHAY et al., Respondents, *v.* SIMON TOMASHOFF et al., Defendants, and GRESHAM REALTY COMPANY, INC., et al., Defendants-Appellants.

First Department, April 21, 1944.

*David L. Samuels* for appellant Gresham Realty Company, Inc.

*David M. Engelson* for appellant Carnegie Plaza Apartment Corporation.

*Jacob Lippman* of counsel (*Hoffman & Hoffman,* attorneys), for respondents.

TOWNLEY, J. The question presented on this appeal is whether the complaint, which involves a rather complex statement of facts, states a cause of action against the moving defendants.

Carnegie Plaza Apartment Corporation (hereinafter referred to as Carnegie) is the owner of a building at 162 West 56th Street, which has several stores fronting on Seventh Avenue. Gresham Realty Company, Inc., (hereinafter referred to as Gresham) is the agent of that building. Defendant Reuben R. Smith, Inc. (hereinafter called Smith, Inc.) is a drugstore-operating corporation and the tenant of one of the stores.

On August 21, 1936, this store in the building was leased for ten years to Smith, Inc., for use as a drugstore. The lease contains a prohibition against assigning or mortgaging the lease without the prior written consent of the landlord in each instance. When the lease was made to Smith, Inc., plaintiffs were the sole stockholders, officers and directors of the tenant corporation. Thereafter, in 1936, Smith, Inc., assigned its lease to Leshay Drug Co., Inc., upon consent of Carnegie and Gresham. On March 31, 1941, Leshay Drug Co., Inc. reassigned the lease to Smith, Inc., which assumed once more its faithful performance.

On April 1, 1941, the plaintiffs sold their capital stock in Smith, Inc., to the defendant Simon Tomashoff under a written agreement which is made part of the complaint. In this agreement, Tomashoff agreed to pay $15,500 of the purchase price of $23,500 for the stock in monthly installments evidenced by a series of notes executed by Tomashoff. As collateral security for the payment of these notes, Tomashoff delivered to the plaintiffs the capital stock which he had purchased, and, according to the complaint, " caused to be delivered to the plaintiffs the aforesaid lease " as well as a chattel mortgage on the fixtures. On April 10, 1941, plaintiffs gave to Carnegie and Gresham copies of the reassignment of the lease from Leshay Drug Co., Inc., to Smith, Inc., and the assumption of liability thereunder by Smith, Inc. They informed Carnegie and Gresham " of the sale of their stock in Reuben R. Smith, Inc. to defendant Simon Tomashoff, and of the fact that they had received as collateral security for the payment of the unpaid balance of $15,500 the stock in said corporation, the lease of the premises and a chattel mortgage on the fixtures in the premises."

The capital stock and the tenant's copy of the lease have remained in the possession of the plaintiffs since their delivery by Tomashoff. The chattel mortgage is a valid lien on the fixtures.

Thereafter Gresham and Carnegie were informed by plaintiffs that plaintiffs had the right on default in the payment of rent to reacquire the stock of the corporate tenant and repossess themselves of the lease and they requested Carnegie and Gresham to advise plaintiffs or their attorney of any default in the payment of rent under the lease.

Paragraph '' 18 '' of the agreement between plaintiffs and Tomashoff is pleaded in the complaint. It appears that Tomashoff agreed '' to cause said lease aforementioned to remain in full force and effect without any change or modifications of any kind for and during such time as the obligations [to plaintiffs] are unpaid, in whole or in part, and that they shall not enter into any agreement with the landlord whereby any of the terms, covenants and conditions are cancelled, modified, surrendered or forfeited or any of the rights thereunder diminished without the written consent of the vendors [plaintiffs] first having been obtained, except that the vendees may have the right to effect a reduction in rent under said lease provided, however, said lease and its terms and provisions remain in full force and effect; that said lease aforementioned shall be assigned to the vendor and held by it as collateral security for the payments of the $15,500 in the manner hereinbefore provided.'' Knowledge of this paragraph '' 18 '' is imputed to appellants. No assignment, however, was ever made.

On June 9, 1943, without the knowledge or consent of plaintiffs, Gresham and Carnegie entered into a written agreement by which the 1936 lease was canceled and terminated and a new lease was made to Smith, Inc., by which Gresham and Carnegie were given the right to terminate the lease on thirty days' notice to the tenant. On August 27, 1943, Gresham advised plaintiff Herman Leshay in writing that it had notified the tenant Smith, Inc. that the new lease of June 9, 1943, was canceled and terminated as of September 30, 1943, that the premises were to be vacated on or before that day, and that Leshay was requested to remove the fixtures and equipment from the premises on or before September 30, 1943.

It is alleged on information and belief that Gresham and Carnegie are about to enter into a lease of the store with the defendant Hotel Wines & Liquors, Inc. as tenant, to commence on October 1, 1943; that the cancellation of the lease

dated June 9, 1943, and the making of the new lease on June 9, 1943, were " done pursuant to a conspiracy entered into on or about said 9th day of June, 1943 " between all the defendants; and that in order to carry out their purpose, defendants entered into a conspiracy to destroy plaintiffs' security by which Tomashoff agreed, in violation of the agreement with plaintiffs, to enter into the cancellation of the lease on behalf of Smith, Inc., and thereafter make the new lease and to do whatever was necessary to give possession of the store to Carnegie and Gresham so that in turn they might lease it to Hotel Wines & Liquors, Inc.

It is further alleged that Tomashoff willfully violated his agreement of sale with plaintiffs and without plaintiffs' knowledge or consent entered into the cancellation agreement and the new lease, " it being the intention of the conspirators " that the new lease would shortly be canceled pursuant to its terms' and at such a time as the defendants Lanzner and Hotel Wines & Liquors, Inc., should determine, and that in furtherance of the conspiracy the new lease of June 9, 1943, was terminated.

It is also claimed that when the conspiracy was entered into and carried out the defendants-appellants knew " of the rights of the plaintiffs in and to the lease to said premises, and knew that the said lease was their principal security for the payment of the sum of $15,500, and that the fixtures, without the lease," are of no value.

On September 2, 1943, Carnegie and Gresham commenced summary proceedings against Smith, Inc., for the possession of the property.

It is finally alleged that by reason of the cancellation plaintiffs' security has been wholly destroyed and that plaintiffs will suffer irreparable damage unless the cancellation is set aside, the 1936 lease restored and the defendants enjoined from prosecuting summary proceedings and from obtaining possession.

The answer of Carnegie and Gresham is a general denial of any conspiracy or any wrongful act and of any knowledge about the agreement between plaintiffs and Tomashoff or any of its terms.

We must assume for the purposes of this motion that the defendants-appellants knew of the contract between plaintiffs and Tomashoff. The question then remains whether there was any duty on their part to refrain from entering into a contract with their tenant which would in effect release the landlord from the obligations of this lease and permit it, if it so

desired, to make a more profitable bargain with the defendants Lauzner and Hotel Wines & Liquors, Inc.

The gravamen of the complaint against the appellants is that they knowingly assisted in destroying the value of part of the security which they knew the plaintiffs possessed for the performance of Tomashoff's obligation. In other words, the plaintiffs claim that if the landlord knew that the plaintiffs were relying on this lease as partial security for the performance of the contract with Tomashoff, this knowledge automatically disabled the landlord from exercising its general privilege of negotiating with the tenant for the surrender of the lease for the landlord's own purposes.

The privilege that a landlord possesses in the absence of an agreement to the contrary to purchase back a surrender of the lease is a valuable privilege. It cannot be restricted or interfered with by contracts between the tenant and third parties. There is no privity of estate or privity of contract between plaintiffs and the appellants. There was no assignment of the lease and there could be none which bound the landlord without the landlord's consent. There was no mortgage of the lease and there could be none without the landlord's consent. The tenant is unable to bind the landlord in relation to third persons by his contracts even though the contract is binding on the tenant. We find nothing in the situation which put the tenant under a disability to surrender the lease.

Of course he takes the risk of the legal consequences of a breach of contract. Had a temporary injunction been granted restraining the tenant from surrendering the lease before such action was taken, the situation would be quite different.

As for the appellants, however, they did nothing which they were not privileged to do if they were so advised. It is familiar law that a plaintiff may not procure damages from parties who " conspire " to do what they have a legal right to do.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted.

MARTIN, P. J., GLENNON, DORE and COHN, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion granted.